UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARLENE ALEXANDER; MICHAEL
ALEXANDER; GARY ALLEN; MARSCHA
ALLEN; ANTHONY ALVERNAZ; JENNIFER
ALVERNAZ; FRANK AMBROSE; ELIZABETH
AMBROSE; HAROLD BARTZ; ELISABETH
BARTZ; JAMES BEHRMAN; DOREEN
BEHRMAN; EDWARD BENNETT; GLORIA
BENNETT; ANN BLODGETT; MATT BOGDAN;
JOANNE BOGDAN; RICHARD BRAUTIGAM;
MARIA BRAUTIGAM; JAMES BROWN as
Trustee of the Brown Family Trust;
BERNADETTE BROWN as Trustee of the
Brown Family Trust; IRENE BUDNEY;
MICHAEL BUINISKIS; MARIKAY BUINISKIS;
TIMOTHY BURNETT; NANCY BURNETT;
KIMBERLY A. BURRIS; THOMAS Q.
CARPENTER; DIANE H. CARPENTER;
JUDITH CATLIN; STEPHEN CATLIN; BRENDA
CATLIN; JUSTIN CLARK; JON CLARK; DANE
CLARK; JEFFREY COLEMAN; BRENDA
COLEMAN; JAMES COLLINS; JUDITH
COLLINS; GAYLORD CONRAD as a Trustee of
the Conrad Living Trust; TERRY CONRAD as a
Trustee of the Conrad Living Trust; WILLIAM E.
CORSON, JR; JUDITH A. CORSON; JAMES V.
CRAIN, JR.; MICHELLE M. CRAIN; STEVEN
CROSSEN; MICHAEL D'ALOISIO; BRYSON
DAVIS; ROSE DAVIS; MARK DEMETROS;
ALVIN DEMING; WILLIAM O. EICHHORN;
DOROTHY E. EICHHORN; KEVIN T. EVANEK;
BRENDA M. EVANEK; JOSEPH M.
FABREGAS; JUDITH A. FABREGAS; ROBERT
FARNHAM; LARRY FERGUSON; DEBORAH
FERGUSON; BARBARA FRECHETTE; KAREN
L. GARRITY; PAUL E. GREEN; BARBARA E.
GREEN; RICHARD GUMBLE; PEDRO
GUTIERREZ; RUSSELL A. HAMILTON;
GRACE A. HAMILTON; LINDA HAMMOND;
JOHN M. HANSEN; KATHY L. HANSEN;
ROYICE ANN HARFORD; EMMA
HARSH-HARNER; JAMES HARZINSKI;
SANDRA HARZINSKI; JAMES HIDOCK;

PETER HIDOCK; GEORGE HIDOCK; ALLEN
HOPKINS; MARY TARTANIAN; KENT
HOWELL; EILEEN HOWELL; GARY HUDOCK;
ROBIN HUDOCK; ROY HUHTA; MARGARET
HUHTA; ELIZABETH J. HUNT; DALE
JACKSON; PATRICIA A. JACKSON; BRYCE J.
JACKSON; MICHELLE JENKINS-PARASTAN;
MICHAEL JOYCE; KATHLEEN JOYCE;
NORMA JOYCE; MAUDE KLOSSNER as
Trustee of the Maude Klossner Revocable
Trust; ROBERT W. KLOSSNER; KATHLEEN
KLOSSNER; STEPHEN J. KMAN; STEPHEN
KMAN, II; GLORIA C. KNAPP; HAROLD
KNAPP; NANCY KOBYLARZ; WALTER
KOBYLARZ; HAROLD KOSTER; JOAN
KOSTER; STEPHEN J. KUTNEY, JR.; HENRY
KWIATKOWSKI; LBK PROPERTIES, INC.;
CATHY LANNING; MICHAEL LANNING;
ANTHONY LIPKA; NETTIE LIPKA; DENISE
ARMAGNO; TONI DABLAN; ROBERT R.
LORD; LAWRENCE R. MAIER; LINETTE
MARSCHALL; WILLIAM MARSCHALL; SCOTT
MCQUEEN; DAVE MOLYNEAUX; JULIE
MONELL; MATTHEW MONELL; ALEX MUEHL;
ANN MARIE MUEHL; DEBRAH MUSKA; ANITA
NABER; NEWARK VALLEY GOLF CLUB, INC.;
ANTHONY M. NIETO; ANTHONY M. NIETO, III;
JOSEPH NIETO; JOYCE NIETO; NICOLE
NIETO; THOMAS J. OVEN; DIANNE J. PAIGE;
KEVIN C. PAIGE; EARL PAUGH; GALE
PAUGH; RITA PEACOCK; CHARLES
PEARSALL; RUTH ELLEN PEARSALL;
MICHAEL PERRY; NANCY PERRY; SAXTON
FRANKLIN as Trustee of the Franklin W. and
Suzanne F. Saxton Family Trust dated
November 6, 2002; LARRY E. PETERSON;
REBECCA PETERSON formerly known as
REBECCA STREETER; FRANCES PHILLEY;
JASON PIPHER; DOROTHY MAE RAPP;
BRENDA RHODES; DOUGLAS RHODES;
LUCILLE RHODES; MARGARET M.
RICHARDS as a Trustee for the Richards
Family Trust; RAYMOND R. RICHARDS as a
Trustee for the Richards Family Trust; LELAND
E. RIDER as a Trustee of the Leland Rider and

Marjorie V. Rider Declaration and Trust;
MARJORIE V. RIDER as a Trustee of the
Leland Rider and Marjorie V. Rider Declaration
and Trust; BRIAN RIECHERS; IRENE
RIECHERS; ANDREW J. ROBINSON;
ARTHUR W. ROBINSON as Trustee of the
Arthur W. Robinson Living Trust dated 5/18/06;
BRUCE R. ROBINSON as Trustee of the Bruce
R. Robinson Living Trust dated 5/27/06;
STEVEN E. ROBINSON; GARY ROCKWELL;
JEANINE ROCKWELL; GARY E. ROZELLE;
CHERYL SACCO formerly known as CHERYL
INSINGA; HELEN SACCO; JOHN SACCO;
MIKE SACCO; SUSAN J. SAUNDERS; GARY
SCHOONOVER; HELEN SCHOONOVER;
NICK SCHOONOVER; SUZANNE YANUZZI;
KAREN A. COULTER; SUSAN NICHOLSON;
GLENN SCOTT; DAVID SHAFER; STEPHEN
SHAFER; JOAN SHAVER; RAY SHAVER;
ALOYSUIS E. SHIPMAN; PATRICIA SHIPMAN;
STEPHEN SHIPMAN; VALERIE J. SHIPMAN;
KENNETH W. SHORT; RUSSELL SHOULTES;
CHAD SHOWERS; JUDITH SHOWERS; KEVIN
SLAUGHTER; DOUGLAS SPARKS;
JACQUELINE SPARKS; KENNETH
ALEXANDER as Owner; VERNA ALEXANDER
as Owner; BRIAN CAIN; LUCINDA HANBURY
as Administrator of the Estate of Robert
Hanbury; ST. NICK'S FOREST, LLC; DAVID
STACK as purchaser of Property currently
owned by KENNETH & VERNA ALEXANDER;
ROSE STACK as purchaser of property
currently owned by KENNETH & VERNA
ALEXANDER; BENJAMIN STERNBERG; DEB
STOUGHTON; TIM STOUGHTON; BRIAN
STOUT; JOSEPH F. STOUT; MARCIA STOUT;
CLAUDE STRIFE; DIANE STRIFE; ANNA
MARIE SULLIVAN; LAURENCE SULLIVAN;
ANNA SZANTO; ARPAD SZANTO; RICHARD
TAYLOR; VERDA TAYLOR;  DORA E.
TRUESDAIL; JESSE TRUESDAIL, JR.; JOHN
TRUESDAIL;  RALPH TRUESDAIL;
LAURENCE TURNER; JOAN VILLECCO;
JOSEPH VILLECCO; DANIEL R. VOUGH;
LINDA R. VOUGH; HAROLD VRABEL also

known as HAROLD VARBEL; KAREN AUNE;
RALPH WALKER; BRIAN WANCK; GERALD
WANCK; GLENN WANCK; JACQUELINE
WANCK; KEVIN WANCK; TAMARA WANCK;
WANDA WANCK; GERALD WEED; MARTINA
WEED; MARION WEISSE; GEORGIA
WESTGATE; ROGER WESTGATE; BARBARA
WILLETT; RICHARD WILLETT; ROBERT L.
WOODBURN; DANIEL WOODRUFF; YVONNE
WOODRUFF; DONALD ZIMMER; MARY
ZIMMER; BRIAN ZORN; JERRINE ZORN;
ADAM S. BURCH, JR. as Co-Trustee of the
Burch, Jr. Family Trust; GERTRUDE S. BURCH
as Co-Trustee of the Burch, Jr. Family Trust;
CARL P. DEYO; DIANE DEYO; DANIEL P.
FLANAGAN; LAURIE GANOUNG; STEVEN
GANOUNG; JACK GROB; DONALD L. PERRY
individually and as Co-Trustee of the Sandra L.
Perry Revocable Living Trust; SANDRA L.
PERRY individually and as Co-Trustee of the
Sandra L. Perry Revocable Living Trust;
RICHARD A. RIDGEWAY, JR.; JOYCE A.
WHITE; PETER C. WHITE; KENNETH
HERZL-BETZ; and LOUISE HERZL-BETZ,

                        Plaintiffs,

        -v-

                                  3:11–CV–308

CHESAPEAKE APPALACHIA, LLC and
STATOILHYDRO USA ONSHORE
PROPERTIES, INC.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                           OF COUNSEL:

COUGHLIN & GERHART, LLP          PETER H. BOUMAN, ESQ.
Attorneys for Plaintiffs               ROBERT R. JONES, ESQ.
19 Chenango Street
P.O. Box 2039
Binghamton, NY 13902

THE WEST FIRM, LLP
Attorneys for Defendant Chesapeake
    Appalachia, LLC
677 Broadway
8th Floor
Albany, NY 12207

THOMAS S. WEST, ESQ.
YVONNE E. HENNESSEY, ESQ.

BRACEWELL & GIULIANI LLP
Attorneys for Defendant Statoilhydro
    USA Onshore Properties, Inc.
711 Louisiana Street
Suite 2300
Houston, TX 77002

BRADLEY J. BENOIT, ESQ.

1251 Avenue of the Americas
49th Floor
New York, NY 10020

RYAN M. PHILP, ESQ.

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiffs Arlene and Michael Alexander and other landowners[1] (collectively "plaintiffs")

brought this declaratory judgment action against Chesapeake Appalachia, LLC

("Chesapeake") and Statoilhydro USA Onshore Properties, Inc. ("Statoil") (collectively

"defendants"), seeking a declaration that plaintiffs' leases with defendants expired based on

the primary lease term; that the covenants clause in the leases does not extend the primary

lease term; that no force majeure event[2] exists which extends the leases; that the leases are

---

[1] There are 259 named plaintiffs in this action, many of whom are husband and wife. For brevity, all 259 plaintiffs named in the caption will not be repeated here.

[2] A force majeure event is an event beyond the control of the parties which prevents performance under a contract and may excuse nonperformance. See e.g., Harriscom Svenska, AB v. Harris Corp., 3 F.3d 576, 580 (2d Cir. 1993).

void for a failure of consideration; that defendants failed to make prescribed payments as required by the leases; and that defendants failed to invoke force majeure during the lease term.  See Second Am. Compl..  Finally, plaintiffs charge defendants with violating New York General Business Law section 349 and assert a claim for conversion of their oil and gas rights.  Id.

Defendants moved to compel arbitration and stay the claims of three plaintiffs not subject to arbitration.  Plaintiffs opposed and defendants replied.  The motion was taken on its submissions without oral argument.

## II.  BACKGROUND

The following facts are undisputed.  Plaintiffs are a group of landowners who reside in New York State throughout Broome, Tioga, Cortland, and Chemung counties.  They collectively own approximately 10,000 acres of land.  Between 1999 and 2005, the plaintiffs each[3] entered into separate oil and gas leases with either Central Appalachian Petroleum ("CAP") or Columbia Natural Resources, LLC ("CNR") (collectively the "leases").  Plaintiffs each leased to either CAP or CNR all oil, gas, and constituents underlying their property, and the rights necessary to develop, produce, measure, and market them.  The CAP leases were executed in 1999 and 2000 for a ten year primary term.  See Second Am. Compl., Ex 2.  The CNR leases were executed in 2004 and 2005 for a five year primary term.  See id. Generally, the terms provided for the lessees to pay the lessors an annual Delay Rental payment until the commencement of Royalty payments (upon production of oil or gas).  The CAP leases provided for a Delay Rental payment of $3.00 per acre per year and the CNR

---

[3]  Some of the leases were entered into jointly by husband and wife, while others are individuals, businesses, or trustees of trusts.

leases provided for a Delay Rental payment of $5.00 per acre per year. Each lease was duly recorded in the proper county clerk's office. In total, there are approximately 150 leases that are the subject of this litigation.

Since that time, the leases have been acquired by Chesapeake which, in turn, assigned 32.5% of its interest in the leases to Statoil. By the primary lease terms of five and ten years, the leases at issue expired in 2009 and 2010. As of those dates, no wells had been drilled on the properties and no royalties had been paid to plaintiffs. To date, there has still been no drilling and no royalty payments.

With the exception of two leases (the "Hidock leases"[4]), each lease that is the subject of plaintiffs' complaint contains the following arbitration clause:

> ARBITRATION: In the event of a disagreement between Lessor and Lessee concerning this lease, performance thereunder, or damages caused by Lessee's operation, settlement shall be determined by a panel of three disinterested arbitrators. Lessor and Lessee shall appoint and pay the fee of one each, and the two so appointed shall appoint the third, whose fee shall be borne equally by Lessor and Lessee. The award shall be by unanimous decision of the arbitrators and shall be final.

See e.g., Second Am. Compl., Ex. 2 ("Lease A").

## III. LEGAL STANDARD–CHOICE OF LAW

The parties first disagree over which law is to be applied to this motion. Defendants contend the Federal Arbitration Act ("FAA") governs because the oil and gas leases concern interstate commerce. Plaintiffs dispute the application of the FAA and argue New York law

---

[4] The Hidock leases are CNR leases which originally included the arbitration clause. However, the lessors for these two leases, James Hidock on one lease, and James, Peter, and George Hidock on the other lease (collectively the "Hidock plaintiffs") negotiated the arbitration clause out of their leases at the advice of a family friend experienced in the oil and gas industry.

applies because all of the leases concern real property in New York and no gas has been drilled yet alone transported in interstate commerce.  They urge that public policy in New York precludes arbitration under these circumstances because the dispute centers on matters of important governmental policy and state interest.

Diversity jurisdiction exists over this matter pursuant to Title 28 of the United States Code, section 1332.  Because diversity actions are generally governed by state substantive law, a district court sitting in diversity must determine whether an arbitration dispute is governed by the FAA or state law.  The FAA applies only to written arbitration agreements connected to a transaction involving interstate commerce.  See ACEquip Ltd. v. Am. Eng'g Corp., 315 F.3d 151, 154 (2d Cir. 2003); 9 U.S.C. §§ 1, 2; see also David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd., 923 F.2d 245, 249 (2d Cir. 1991) ("[FAA] applies in federal court to diversity suits which relate to contracts involving interstate or international commerce.").

The FAA's application here turns on whether the leases involve commerce.  The Supreme Court has held that the term "involving commerce" signifies the "broadest permissible exercise of Congress' Commerce Clause power."  Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S. Ct. 2037, 2040 (2003) ("[T]he FAA encompasses a wider range of transactions than those actually 'in commerce'-that is, 'within the flow of interstate commerce.'").  The Supreme Court explained that "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'"  Id. at 56–57, 123 S. Ct. at 2040 (quoting Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co., 334 U.S. 219, 236, 68 S. Ct. 996, 1006 (1948)).

Thus, "[o]nly that general practice need bear on interstate commerce in a substantial way." Id. at 57, 123 S. Ct. at 2040.

Applying those guidelines, the leases here fall within the extent of Congress' Commerce Clause power.  Although the oil and gas leases at issue involve real property only in New York, the plaintiff landowners in New York negotiated the subject leases with CAP, an Ohio company and CNR, a Delaware limited liability company.  Those leases have since been acquired by Chesapeake, an Oklahoma limited liability company and Statoil, a Delaware corporation.  Further, while no drilling has yet been commenced on the properties and thus no gas has been found nor shipped in interstate commerce, the contracts clearly evidence transactions involving interstate commerce.  As defendants point out, the leases' primary purpose is the development of gas resources which will ultimately be placed in an interstate pipeline subject to federal regulation.  The ultimate success or failure of such development at this stage does not dictate whether the contracts involve commerce. Accordingly, the leases satisfy the FAA's "involving commerce" test and the FAA will be applied.

## IV.  DISCUSSION

### A.  Motion to Compel Arbitration

Defendants move to compel arbitration pursuant to the arbitration clause in all but two of the leases at issue.  They contend the arbitration clause is broad and by its terms, covers all "disagreement[s] between Lessor and Lessee concerning this lease, [and] performance thereunder."  See Lease A.  They are argue that all of the causes of action concern the leases or defendants' performance under the leases and should be decided by an arbitration panel.

Plaintiffs oppose and assert the leases expired by their own terms and thus there is no existing agreement to arbitrate.  They also contend they never agreed to arbitrate with Chesapeake or Statoil, only CAP and CNR, who assigned the leases to Chesapeake and then Statoil.  Finally, plaintiffs urge arbitration agreements in this context are procedurally and substantively unconscionable and therefore not enforceable based on the size and commercial setting of the transaction, the unequal bargaining power between the parties, deceptive tactics used by defendants, and the fine print of the clause.

The Second Circuit endorses a two-part test to determine whether arbitration is appropriate.  Under that test, a court must consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  In re Amer. Express Fin. Advisors Secs. Litig., --- F.3d ---, ---, No. 10–3399, 2011 WL 5222784, at *9 (2d Cir. Nov. 3, 2011).  In the second inquiry, a court "must determine who—the court or the arbitrator—properly decides the issue."  Id. (citing Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 393 (2d Cir. 2011)).

### 1.  Agreement to Arbitrate

The FAA provides that a written arbitration provision in a contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has described section 2 "as reflecting both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  AT&T Mobility LLC v. Concepcion, ---- U.S. ----, ----, 131 S. Ct. 1740, 1745 (2011) (internal citations and quotations omitted).  Therefore, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms."  Id. (internal citations and quotations omitted).

Section 2 of the FAA permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under this clause, arbitration agreements may "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  AT&T Mobility, 131 S. Ct. at 1746 (internal citations and quotations omitted).

Moreover, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."  Buckeye Check Cashing, Inc. v. Sardegna, 546 U.S. 440, 445, 126 S. Ct. 1204, 1209 (2006).  Therefore, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  Id. at 445–46, 126 S. Ct. at 1209.

The central question in this case is whether the leases have been extended beyond the primary lease terms of five and ten years.  The question is not whether valid leases were ever entered into, or whether arbitration agreements were ever made.  The formation of the contracts are not at issue; merely the duration is.  The first, second, third, sixth, and seventh causes of action involve the duration and extension of the leases.[5]  Because an arbitration provision is severable from the remainder of the contract, Buckeye Check Cashing, 546 U.S. at 445, 126 S. Ct. at 1209, and the challenge here is not to the arbitration clause itself but instead to the duration of the lease term, "the issue of the contract's validity is [to be] considered by the arbitrator in the first instance."  Id. at 446, 126 S. Ct. at 1209.

---

[5]  The fourth, fifth, and eighth causes of action are discussed below and do not necessitate a different outcome.

Moreover, while not binding, it is worth noting that several other courts have considered this same issue.  In April 2011, the Tioga County Supreme Court entertained a motion to compel arbitration under similar facts.  In <u>Mastrantuono v. Chesapeake Appalachia, LLC</u>, No. 41318 (N.Y. Sup. Ct. Apr. 6, 2011), the plaintiff landowners sought a declaratory judgment affirming the expiration of an oil and gas lease entered into with the defendant.[6]  <u>See</u> Hennessey Decl., June 3, 2011, Ex. C.  The defendant argued the lease did not expire due to a force majeure event and moved to compel arbitration.  The lease contained an arbitration clause identical to the clauses at issue here.  The plaintiffs contended the arbitration provision was intended only to resolve disputes relative to the performance of the parties under the lease, and not applicable to a dispute as to the termination or continuing validity of the lease itself.  The court noted the arbitration provision was broad and contained no limitation as to the type of disagreement.  Thus the term "a disagreement" "must logically be construed as <u>any</u> disagreement, absent limitation by the parties or public policy."  <u>Id</u>. at 3. The court concluded that the dispute over whether a force majeure event occurred was certainly "a disagreement" "concerning th[e] lease," and thus arbitration was required.  <u>Id</u>.

The United States District Court for the Middle District of Pennsylvania considered a similar case in May 2011.  In <u>Beinlich v. Chesapeake Appalachia, LLC</u>, No. 3:11–CV566 (M.D. Pa. May 31, 2011), the plaintiff landowners brought suit against the defendants relating

---

[6] In that case, the lease was recorded July 27, 2004, and had a primary term of five years.  Under those facts, the lease would have expired July 27, 2009.

to the expiration of their oil and gas lease.[7]  See Hennessey Decl., June 3, 2011, Ex. C.  The defendants moved to compel arbitration pursuant to an arbitration clause in the lease identical to the provision at issue in this case.  The plaintiffs opposed and argued the lease terminated based on the lease term of five years, thus arbitration could not be compelled.  The court found that "[w]hile there appears to be an issue as to the overall validity of the [lease] Agreement, and its possible expiration . . . whether or not an agreement currently exists . . . is a factual determination that falls within the province of an arbitration panel, and not this court."  Id. ¶ 11.  The court explained that the lease was valid and enforceable at the time it was executed and thus the terms of that agreement were, and are, still enforceable upon the parties, including the agreement to arbitrate.  Id. ¶ 14.  Because the dispute over the lease's expiration "arises from the terms of the Lease itself . . . the parties are bound by the arbitration agreement, even if such agreement has since passed its time period of five years."  Id. ¶ 10, n.2.  Accordingly, the court granted the defendants' motion to compel arbitration.

Finally, while the parties' arguments focus on the causes of action challenging the leases' extension, it must be noted that the fourth, fifth, and eighth causes of action do not alter the finding that the parties entered into an agreement to arbitrate.  The fourth cause of action alleges the leases are void for a failure of consideration.  It is significant that "when there is a failure of consideration, there is originally a contract when the agreement is made, but because of some supervening cause, the promised performance fails."  Richard A. Lord, 3 Williston on Contracts § 7:11 (Westlaw ed., 4th ed. 2011).  By contrast, where there is an

---

[7]  In that case, the lease was recorded December 10, 2005, and had a primary term of five years. Under those facts, the lease would have expired December 10, 2010.

allegation that no consideration exists but is required, "the lack of consideration results in no contract being formed in the absence of a substitute for consideration." Id. Because this cause of action falls into the former category, it does not challenge contract formation nor the agreements to arbitrate.  Likewise, the fifth cause of action alleging a violation of New York General Business Law section 349 and the eighth cause of action alleging conversion do not affect the parties' agreement to arbitrate.

For these reasons, the parties entered into a valid agreement to arbitrate and the second prong of the test will be considered.

## 2. **Scope of Arbitration Agreement**

While arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 591 (2002) (quoting Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960)).  Despite a liberal policy favoring arbitration agreements, the Supreme Court has made clear the following exception: "The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Id. (quoting AT&T Technologies, Inc. v. Commc'ns Workers, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986)).  However, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, 103 S. Ct. 927, 941–42 (1983).

The arbitration provision at issue here is extremely broad and requires the parties to arbitrate "a disagreement between Lessor and Lessee concerning this lease, performance

thereunder, or damages caused by Lessee's operations."  <u>See</u> Lease A.  Because the term "a disagreement" is not qualified nor excludes any specific type of dispute, all of the causes of action asserted in the complaint fall within the scope of the arbitration clause because they concern the lease, performance thereunder, or damages.

Plaintiffs and defendants entered into valid agreements to arbitrate.  The actual arbitration clause itself has not been challenged by plaintiffs, but instead the contracts' validity.  Further, the disputes raised by plaintiffs fall within the scope of the broad arbitration clause.  For these reasons, defendants' motion to compel arbitration will be granted as to those leases containing the arbitration clause.

### B. <u>Stay of Hidock Plaintiffs' Claims</u>

The Hidock leases account for two of the approximately 150 leases that are the subject of this litigation.  Although the Hidock leases do not contain an arbitration clause, the Hidocks assert the same claims in the complaint as the remaining 256 plaintiffs (and approximately 150 leases) subject to arbitration.  Defendants contend that because the Hidock plaintiffs' claims concern common questions of law and fact as the remaining plaintiffs, a discretionary stay is warranted as to the Hidocks in order to promote judicial economy and avoid confusion as well as potentially inconsistent results.

The Hidocks oppose and argue they have a right to move forward with their claims and seek redress in the courts.  They contend that any arbitration decision regarding the remaining plaintiffs or leases would not be binding on them, thus a stay will do nothing more than delay resolution of their claims.  Finally, they assert that defendants have made no showing they will suffer hardship or inequity by having to defend the Hidock claims on the merits.  Instead, the Hidocks argue they will be harmed by a stay because they are elderly, of

modest means, and defendants' claims to their property have made it impossible for them to mortgage, sell, or refinance their property.

A district court has discretion to stay pending actions when issues in the case may be determined in a pending arbitration proceeding.  See Empire State Ethanol and Energy, LLC v. BBI Int'l, No. 1:08CV623, 2009 WL 1813205, at *1 (N.D.N.Y. June 25, 2009) (Sharpe, J.) (citing Citrus Mktg. Bd. of Isr. v. J. Lauritzen A/S, 943 F.2d 220, 225 (2d Cir. 1991)).  In determining whether such stay is justified, a court must consider:  "1) whether there are common issues between the arbitration and the litigation; 2) whether those issues are likely to be resolved in arbitration; 3) whether the failure to grant a stay will prejudice the defendant; and 4) whether the stay will prejudice the plaintiff."  Id. (citing WorldCrisa Corp. v. Armstrong, 129 F.3d 71 (2d Cir. 1997) and Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991)).

### 1.  Common Issues

There can be no dispute that the factual and legal issues in the Hidock claims are identical to the issues in the arbitrating plaintiffs' claims.  The Hidocks account for three out of 259 plaintiffs in this action.  Therefore the common issues weigh in favor of granting a stay.

### 2.  Resolution of Common Issues

Arbitration will likely address all of the factual and legal issues raised in the Hidock claims.  However, any decision reached by an arbitration panel will not be binding on the Hidocks.  Thus no common issues will actually be resolved.  Accordingly, this factor weighs against granting a stay.

### 3. **Prejudice to Defendants**

Defendants' claimed prejudice that they will be "deprived of their arbitration rights" if a stay is not granted, without further explanation, is unpersuasive.  It is true however that they may incur expenses due to duplicative discovery and unnecessary litigation—a recognized prejudice.  In fact, a stay is generally preferred where litigation parallel to arbitration would involve significant expense and inconvenience.  See id. at *2 (citing WorldCrisa Corp., 129 F.3d at 76).  Therefore defendants have established that the failure to issue a stay would prejudice them.

### 4. **Prejudice to Hidock Plaintiffs**

With respect to the Hidocks' claimed prejudice, it is true that the leases are clouding title to their land and that resolution of this lawsuit is essential to their ability to mortgage, sell, or refinance their property, or even contract with a different oil and gas company at current market rates.  Thus, they have established they would be prejudiced should a stay be granted.  However, it should be noted that the Hidocks voluntarily chose to join this action with 256 other plaintiffs, whose leases all contain an arbitration clause.

Also related to the Hidocks' prejudice is that "the moving party must prove that it has 'not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay will not [cause] undue hardship.'"  Id. at *3 (quoting Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441–42 (2d Cir. 1964)).  Defendants have averred they will take no steps to hamper the arbitration, and there is no evidence to the contrary at this point.  To this end, in the event that arbitration is not initiated within six months of the date of this Memorandum-Decision and Order, the Hidocks may bring a motion to vacate the

stay.  Additionally, they may also move to vacate the stay if arbitration is not completed within six months of its initiation.  Accordingly, a discretionary stay under these circumstances will not prejudice the Hidocks.

After full consideration of the above four factors, it is found that a discretionary stay of the claims brought by the Hidocks is appropriate at this time.

## V. CONCLUSION

The CAP and CNR leases involve commerce and thus the FAA applies.  The FAA's two-prong test has been satisfied:  there are valid agreements to arbitrate and the disputes raised fall within the scope of the arbitration clause.  Therefore arbitration will be compelled as to those leases that include an arbitration clause.

Finally, defendants' request for a discretionary stay as to the Hidocks, whose leases do not include an arbitration clause, will be granted.  Their claims will be stayed while the remaining plaintiffs arbitrate their claims, subject to the time limits imposed by this Memorandum-Decision and Order.

Therefore, it is

ORDERED that

1.  Defendants' motion to compel arbitration as to those plaintiffs subject to an arbitration clause is GRANTED;

2.  Defendants' request to stay the non-arbitrating Hidock plaintiffs' claims is GRANTED;

3.  In the event arbitration is not initiated within six months of the date of this Memorandum-Decision and Order, the Hidock plaintiffs may bring a motion to vacate the stay; and

4.  In the event arbitration is not completed within six months of its initiation, the Hidock plaintiffs may bring a motion to vacate the stay.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  March 20, 2012
       Utica, New York.